# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

MARGARET CAPALONGO and RONALD CAPALONGO,

Appellants,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as
trustee for Morgan Stanley Capital 1 Inc. Trust
2006-HE2, Mortgage Pass-Through Certificates,
Series 2006-HE2,

Appellee.

No. 2D22-3750

_____

March 27, 2024

Appeal from the Circuit Court for Pasco County; Kimberly Sharpe Byrd,
Judge.

Roland D. Waller of Law Office of Roland D. Waller, New Port Richey, for
Appellants.

Joseph G. Paggi III, and David B. Adamian of DeLuca Law Group, PLLC,
Fort Lauderdale; and Lindsay R. Rich and Branden M. Henderson of
First American Law Group, Tampa, for Appellee.


SLEET, Chief Judge.

Margaret Capalongo (the Wife) and Robert Capalongo (the Husband) appeal the final judgment of foreclosure entered in favor of Deutsche Bank National Trust Company following a nonjury trial. We affirm the judgment, but we write to address the Husband's valid waiver of his homestead rights in the property.

In 2000, the Capalongos purchased their home, owning it jointly as tenants by the entirety. In 2005, the Wife sought to refinance the home and obtained a mortgage loan with WMC Mortgage Corp. Pursuant to the refinancing terms, the Husband was required to transfer his interest in the home by deed to the Wife and sign a waiver of his homestead rights. On December 23, 2005, the Husband executed a warranty deed transferring the property to be exclusively in the Wife's name. Attached to the warranty deed was a waiver titled "Borrower Spouse," which provided:

> BORROWER(S)' SPOUSE(S): The undersigned *hereby joins in this Security Instrument* for the sole purpose of subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned subordinates, conveys, and/or *waives any and all rights*, interest or claims in the Property, *including*, but not limiting to, *homestead*, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse(s).

(Emphasis added.) The same day, the Wife executed the new note and mortgage. All three documents—the deed, mortgage, and waiver—were witnessed and notarized by the same notary public and were subsequently filed in sequential pages in the Official Records Book of the Public Records of Pasco County, Florida.

In January 2012, the Wife failed to make the mortgage payments, and following continued nonpayment, she was notified of the default in November 2016. The mortgage was assigned to Deutsche Bank on

2

March 12, 2012, which prosecuted this foreclosure action. The Capalongos filed their answer and raised several affirmative defenses including that the property was the Husband's homestead because he did not execute or join the mortgage. On August 17, 2021, Deutsche Bank moved for partial summary judgment on three of the Capalongos' affirmative defenses. The trial court granted the motion, finding that the Husband "validly and expressly joined in [the Wife's] mortgage and waived his homestead rights in the [p]roperty." The parties then proceeded to a nonjury trial, after which the trial court entered a final judgment of foreclosure against the Wife. This appeal timely followed.

The Capalongos argue on appeal that the trial court erred in entering partial summary judgment as to their affirmative defense that the Husband still maintained homestead rights in the property. They maintain that because his waiver was not attached to the mortgage, it was invalid. This argument is without merit.

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Here, the Capalongos do not argue that any disputed issues of material fact remained. Rather, they argue that Deutsche Bank was not entitled to partial summary judgment as a matter of law. We review the trial court's ruling de novo. *See Taylor v. Maness*, 941 So. 2d 559, 562 (Fla. 3d DCA 2006) (" 'Where no genuine issue of material fact is shown to exist, the only question for the appellate court is whether the summary judgment was properly granted under the law.' Thus, '[a] trial court's ruling on a motion for summary judgment regarding a pure question of law is reviewed de novo.' " (citation omitted) (first quoting *Yardum v. Scalese*, 799 So. 2d 382, 383

3

(Fla. 4th DCA 2001); and then quoting *Fernandez v. Homestar at Miller Cove, Inc.*, 935 So. 2d 547, 550 (Fla. 3d DCA 2006))).

Section 4 of article X of the Florida Constitution provides that a homestead to the extent of 160 acres of contiguous land or the half of one acre within the limits of a municipality "shall be exempt from forced sale under process of any court." Art. X, § 4(a)(1), Fla. Const. Such homestead rights are held inviolate and can be alienated only as provided by the Florida Constitution. Particularly applicable to this case, article X, section 4(c) allows for alienation by mortgage if the spouse joins.[1] Art. X, § 4(c), Fla. Const. ("The owner of homestead real estate, *joined* by the spouse if married, may alienate the homestead by mortgage, sale or gift . . . ." (emphasis added); *see also Crawford v. Fed. Nat'l Mortg. Ass'n*, 266 So. 3d 1274, 1277 (Fla. 5th DCA 2019) ("Florida courts have consistently interpreted this constitutional provision as requiring spousal joinder in the execution of a mortgage on homestead property in order for the mortgage to encumber the property and be enforceable in foreclosure, even where only the signatory spouse is an owner of record on the property's deed."). Here, in order for the Husband to have validly waived his homestead rights, it must be established that he "joined" in the mortgage.

The Capalongos maintain that "join" means "to cause something to be attached or fastened to another thing" and that because the Husband's waiver was not physically attached or fastened to the mortgage, he did not "join" the mortgage for purposes of waiving his homestead rights. The Capalongos further suggest that even a waiver

---

[1] Article X, section 4(c) also provides that "[i]f the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law." Those circumstances are not applicable here.

that specifically references the mortgage is invalid if it is not affixed, appended, or stapled to the mortgage document. This argument has no basis under Florida law.

The Capalongos do not cite, nor can we independently find, any authority to support the argument that a waiver must be physically attached to a mortgage to be effective. In fact, there are no constitutional restrictions on how a spouse may join the mortgage for the purposes of waiving homestead rights. And "[r]equiring that a waiver of the homestead exemption be made in the context of a mortgage assures that the waiver is made knowingly, intelligently, and voluntarily." *Chames v. DeMayo*, 972 So. 2d 850, 861 (Fla. 2007) ("[W]aivers [of constitutional rights] must be made knowingly, voluntarily, and intelligently.").

Here, the undisputed facts are that the Husband executed the waiver and deed on the same day the Wife executed the mortgage. The waiver expressly stated that the Husband "joins in this [s]ecurity [i]nstrument" and "waives any and all rights . . . to[] homestead." And the Capalongos conceded at oral argument that the "security instrument" referenced the mortgage executed by the Wife. Coupled with the fact that the documents were recorded in sequential pages in the county record, it is clear that the document signed by the Husband unequivocally demonstrates his intent to waive his homestead rights. Accordingly, Deutsche Bank was entitled to partial summary judgment as a matter of law.

Affirmed.

LaROSE, J., Concurs.
ATKINSON, J., Concurs Specially.

ATKINSON, Judge, Concurring specially.

I join fully in the majority opinion. I write separately to point out that the Capalongos' argument is not only unsupported by authority—as the majority opinion ably points out—but is also antithetical to the ordinary meaning of the language of the applicable constitutional provision.

In article X, section 4 of the Florida Constitution, the subject of the verb "joined" is "the spouse." Citing a dictionary definition for support, the Capalongos argue that the husband's waiver of his homestead rights was not effectual because the document that would have effectuated that waiver was itself not attached to or fastened to the mortgage. In so doing, the Capalongos supplant the object of the verb "joined"—the homestead owner—with an object not supported by the text—the *document* a spouse might happen to sign in order to effectuate the alienation of the homestead. *See* art. X, § 4, Fla. Const. ("The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift . . . .").

The Capalongos myopically train their focus on one usage of the word "join"—to fasten or attach—to the exclusion of another usage of the word "join"—the joint participation of two individuals in a common activity. While two physical objects can indeed be joined by fastening them together or affixing one to another, two individual human beings can be joined in a common enterprise or joint endeavor. *See Join*, The American Heritage Dictionary 945 (5th ed. 2011) (including the following among the definitions of "join": "To put or bring together so as to make continuous or form a unit: *join two boards with nails; joined hands in a circle*"; "To participate with in an act or activity: *The committee joins me in welcoming you*"; "To engage in; enter into: *Opposing armies joined battle*

6

*on the plain*"; "To act together; form an alliance: *The two factions joined to oppose the measure*"; and "To take part; participate: *joined the search*").

Dictionaries can be useful because, "in general, a dictionary may provide the popular and common-sense meaning of terms." *See Advisory Op. to Governor re Implementation of Amend. 4, the Voting Restoration Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting *Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 800 (Fla. 2014)). However, "the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used," and the fact that a term "can carry different meanings does not" necessarily "render the phrase" in which it is used "susceptible to more than one natural reading." *Id.* at 1079 (quoting in part *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657 (1998)) (reasoning that the word "terms," when viewed in context of the constitutional provision at issue, only had one natural meaning despite the existence of different dictionary definitions). In the context of section 4, it is the spouse himself that does the joining, and not a piece of paper that is joined to something else.

To the extent that any additional indicia is needed to affirm that the word "joined" does not refer to the physical affixation of one document to another, the preposition "by" should be a giveaway. If the term "joined" was being utilized to indicate the connection of two documents, the preposition "to" would be more appropriate. However, the provision uses the preposition "by," making it clear that the joining is to be done by the human being that is the object of the prepositional phrase—the spouse—and that who the spouse is joining in a common endeavor is the homestead owner. *See* art. X, § 4, Fla. Const. (referring

7

to "[t]he owner of homestead real estate, joined by the spouse if married").

Understanding as we must that the subject of the verb "joined" in section 4 is the spouse, and concluding as we should that the husband cannot and need not staple himself to a document or a document to his wife (the "owner of homestead real estate"), the conclusion that the constitution is referring to an act of participation and not of physical affixation is the only reasonable one. *See Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 947 (Fla. 2020) ("[T]he goal of interpretation is to arrive at a 'fair reading' of the text" (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012))). Here, the husband joined in the alienation of his homestead by executing the waiver that said he was doing so by the security instrument to which it referred.

_____

Opinion subject to revision prior to official publication.