700 So.2d 77 (1997)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Kenneth DOUGHERTY and Susan Dougherty, Appellees.
No. 96-03888.
District Court of Appeal of Florida, Second District.
September 26, 1997.
Daniel E. Scott, P.A., Sarasota, for appellant.
Robert E. Turffs of Turffs, Persson, Smith & Darnell, Sarasota, for appellees.
FRANK, Acting Chief Judge.
The Department of Health and Rehabilitative Services (HRS) has appealed from an order denying its motion for new trial in this action for negligent investigation of a child abuse complaint. Because HRS's actions in this case were immune from suit under section 415.511(1)(a), Florida Statutes (1995)[1] we reverse.
Kenneth and Susan Dougherty sued the Department of Health and Rehabilitative Services and Michael K. LaFuze in May of 1991. After four amended complaints and various motions to dismiss and strike, Michael K. LaFuze was dismissed as an individual defendant. The fifth amended complaint was filed on January 6, 1994, alleging negligent investigation, negligent failure to train and supervise, and gross negligence. After motions to dismiss, only the count for negligent investigation remained. HRS filed a motion for summary judgment directed at the negligent investigation count based upon the immunity provided for in section 415.511, Florida Statutes, but the motion was denied. HRS filed both a notice of appeal and a petition for writ of certiorari directed at the trial court's failure to dismiss the negligent investigation count, and this court dismissed both the appeal and the petition without prejudice *78 to consideration of the issue on the ultimate plenary appeal. A trial followed, and the jury returned a verdict against HRS in the sum of $150,000, on May 14, 1996. After HRS's motion for new trial was denied on August 26, 1996, this appeal followed.
The pertinent facts in this case revolve around a complaint of child abuse alleged against Kenneth Dougherty by his stepson, Justin Tesh, on September 1, 1989. Justin and Erika Tesh are the children of Charles and Susan Tesh, who were divorced in February 1989. The two children lived with their mother, who married Kenneth Dougherty in May 1989. Charles Tesh had visitation rights.
On August 31, 1989, Charles Tesh picked Justin up for an unscheduled visitation. Some time later, the two appeared at the Venice Hospital Emergency Room; Justin's face was puffy from crying and they claimed that Kenneth Dougherty had struck Justin. A medical doctor formed the opinion that the boy had been abused, and Justin remained in his father's custody. Later that evening police and HRS workers arrived at Susan's home to question Susan and Kenneth Dougherty and Erika; they then removed Erika from the home and placed her with Tesh. At a shelter hearing on September 6, 1989, the trial court ruled that the children should remain with their natural father, Charles Tesh, and the court further granted Susan Dougherty supervised visitation. The children remained with their father until March of 1990 when, after a dependency trial, the court ruled that HRS had failed to prove the allegations of the petition by a preponderance of the evidence.
The gravamen of the Doughertys' complaint was that HRS, through its employee, Michael LaFuze, failed to investigate adequately the allegations of child abuse against Kenneth Dougherty. As a result, the Doughertys claimed that their relationship with their children was damaged and they incurred attorneys' fees of over $70,000 in their defense of the abuse allegations. Specifically, the Doughertys alleged that HRS overlooked the biological father's significant psychiatric history, which included a suicide attempt. He was bitter about the divorce and failed to pay support for his children. Tesh manipulated the children so that they would assist him in his custody battle with Susan Dougherty. Furthermore, HRS allegedly failed to obtain collateral information for its investigation of sexual abuse of Erika by Kenneth Dougherty. In spite of its knowledge that the children were under the care of the Child Protection Team, HRS and its representatives negligently failed to interview or contact the director or his associate, who had information showing that neither abuse nor neglect had occurred and that the charges had been fabricated by Charles Tesh.
A jury found that HRS, through its employee, Mike LaFuze, was negligent; that the negligence was a legal cause of damage to the Doughertys; and that the plaintiffs suffered damages of $50,000 for legal expenses, $90,000 in damage to the relationship with their children, and $10,000 in damage to their reputation.
The trial court should have granted HRS's motion for directed verdict on the ground that HRS was immune from suit because, by removing the children from the home after allegations of abuse, the Department was carrying out responsibilities imposed upon it by law.[2] The evidence at trial showed that HRS set into motion its normal investigatory process after receiving a legitimate complaint of child abuse from Dr. Nin at Venice Hospital, who opined that Justin's injuries were consistent with abuse and with his version of how he received the injuries. After the children were removed from the Dougherty home, Michael LaFuze talked with Margot Jeffer of the child protection team, but she had not seen the children in six months and possessed no information concerning their current emotional state. LaFuze *79 went to the school that the children attended and talked to their teachers, the counselor, and the principal. Although LaFuze did not obtain Tesh's psychiatric records, he was able to have Tesh evaluated by a psychiatrist. He did not talk to Ken Dougherty because Dougherty's lawyer had instructed him not to discuss the case; this same situation later applied to Susan Dougherty. During the investigation, weekly meetings were held within the Department to discuss the case and its direction. A plan was instituted to reunite the children with their mother, but the process halted when HRS received a new abuse allegation as to Erika. In the meanwhile, Susan Dougherty became undeniably depressed. She and Ken took second jobs to pay their attorney's bills. They ultimately divorced, although it is not clear that the divorce was a direct product of the struggle with HRS.
Nothing in the record suggests that the investigation did not proceed according to HRS's established policies and procedures. Although the process was unfortunately slow and painful for the Doughertys, nothing reveals that the investigation was not instituted and conducted in good faith after a legitimate report of abuse that the Department was required to take seriously. As such, the Department, as an "institution participating in good faith" in acts "authorized or required by ss. 415.502-415.514," was "immune from any civil ... liability which might otherwise result by reason of its action." § 415.511(1)(a), Fla. Stat. (1995) As discussed in Department of Health and Rehabilitative Servs. v. Yamuni, 529 So.2d 258 (Fla.1988), dealing with the sovereign immunity statute that preceded section 415.511, HRS is protected against liability for carrying out its statutory duties on behalf of the protected class, i.e., the allegedly abused child. Sovereign immunity does not apply, however, to persons or institutions that fail to carry out the protective measures. Thus, HRS was required to act as it did. Although its investigation might not have been the most efficient, it was undertaken in a good faith attempt to protect Justin and Erika Tesh. To find that HRS is liable for negligent investigation in situations where the ultimate judicial finding is that HRS did not sustain its burden of proving parental misconduct would create a chilling effect on its child protective functions. The scheme set out in chapter 415 was created for the benefit of children and not for the parents or stepparents.
Accordingly, we reverse the final judgment and remand for entry of judgment in favor of the Department of Health and Rehabilitative Services.
PATTERSON and FULMER, JJ., concur.
NOTES
[1] Section 415.511(1)(a), Florida Statutes (1995), provides that "[a]ny person, official, or institution participating in good faith in any act authorized or required by ss. 415.502-415.514, or reporting in good faith any instance of child abuse to any law enforcement agency, shall be immune from any civil or criminal liability which might otherwise result by reason of such action."
[2] We are aware that this court recently reversed the dismissal of a cause of action for negligent investigation in Johnson v. State of Florida's Department of Health and Rehabilitative Services, 695 So.2d 927 (Fla. 2d DCA 1997). In that case, however, the trial court was confined to the pleadings in ruling on the motion to dismiss and did not have the opportunity to evaluate whether HRS took its action in good faith.